## LYDIA V. SEIDL

### *vs.*

## MAYOR AND CITY COUNCIL OF BALTIMORE.

*Negligence : passing horse in narrow alley.*

A plaintiff was passing through an alley where there were no sidewalks and which was so narrow that there was barely room to pass a team; one of the city's street carts was standing so close to one side of the alley that the plaintiff could not pass; on the other side was a street cleaner shoveling dirt into the cart; the driver went to move the team over, but the plaintiff stood so close to the horse's head that when the driver attempted to move the animal one of its front feet struck and injured the plaintiff's foot.

*Held,* that the plaintiff was guilty of contributory negligence, and the city was not responsible.                    p. 100

*Decided June 19th, 1918.*

Appeal from the Superior Court of Baltimore City. (HEUISLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*William H. Lawrence,* for the appellant.

*Robert F. Leach, Jr., Assistant City Solicitor,* (with whom was *S. S. Field, City Solicitor,* on the brief), for the appellee.

THOMAS, J., delivered the opinion of the Court.

This suit was brought against the Mayor and City Council of Baltimore to recover for an injury alleged to have been caused by the negligence of the defendant's agent or servant. The declaration alleges

"that on July 2nd, 1917, while the plaintiff was law-
fully upon a public highway in the City of Baltimore,
to wit, Griffith's Court, using due care and caution, a
horse hitched to a cart and being driven by an agent
or servant of the defendant, ran into and upon the
plaintiff, injuring her about the feet seriously and per-
manently."

At the conclusion of the testimony the Court below granted
prayers instructing the jury (1) that the uncontradicted evi-
dence in the case showed that the plaintiff had been guilty of
contributory negligence, and (2) that the plaintiff had offered
no evidence legally sufficient to entitle her to recover, and
this appeal is from a judgment in favor of the defendant
for costs, entered upon a verdict rendered in accordance with
said instructions.

The plaintiff testified that on the 2nd day of July, 1917,
she went to see her sister, who lived at No. 720 Eastern ave-
nue. While she was there her sister, who was sick, asked her
to go to the store for her. She went out the "back alley
way," which runs between Eastern avenue and Fawn street
to President street, to a grocery store on High street, near
Fawn street. High street is east of and runs parallel with
President street. In returning from the store by way of
the alley, she had to cross President street. The alley was
paved with "cobble stones," with the gutter in the middle,
and was very narrow—just wide enough for a person to pass
on either side of a wagon or cart standing in the middle of
the alley. When the plaintiff was returning from the store,
between three and four o'clock in the afternoon, as she entered
the alley from President street she saw a horse, attached to
one of the "city street carts," standing in the alley near and
facing President street. They were not in the middle of the
alley, but so far to one side that she could not pass them
on that side. The driver was on the other side, in a "stooping
position," putting dirt in the cart. She approached the horse
and wagon on the side of the alley where there was not room

for her to pass, and when she reached the horse's head she stopped. When the driver raised up and saw her, he told her that he would move the horse so she could pass. He took hold of the bridle on the horse, and instead of moving the horse to the other side of the alley, he pushed the horse towards her and the horse's foot came down on her foot and caused the injury complained of. She further testified that the horse and wagon did not move after she entered the alley, but remained in the same position on one side of the alley, and that she did not attempt to pass on the other side because the driver was on that side; that she stopped when she was about a foot from the horse's head and remained in that position while the driver was attempting to move the horse, until he pushed the horse toward her and the horse stepped on her foot; that she did not step back or move out of the way when the driver went to move the horse; that the horse did not move forward, or move his hind feet, and that the wagon did not move, but that the horse simply "shoved" his right front foot "over" and it "happened" to strike her foot; that the front of the horse's shoe struck her instep and bruised it; that the driver followed her into her sister's house, and that she said there in his presence, and in the presence of others that it was not his fault, and that she made that statement because she did not want him to lose his position. Doctor Onnen, who attended the plaintiff, and who saw her on the day the accident occurred, stated that the condition of her foot indicated that she had received a "glancing blow." The driver of the cart testified that he moved the horse so that the plaintiff could pass; that he did not move the horse towards her, but towards the opposite side of the alley; that the alley was very narrow, and that even after he moved the horse "she could just barely get through." Other evidence in the case shows that the alley from President street to the place where the accident occurred was ten feet wide, and that the width of the cart, "from hub to hub," was six feet.

Assuming the truth of the plaintiff's testimony, and that the driver of the cart was guilty of negligence in moving the horse towards the side in which she was standing instead of towards the opposite side, we think the evidence clearly shows that she was also guilty of negligence which directly contributed to the injury complained of. Even if it can be said that she was not negligent in atempting to use the alley in going from President street to her sister's home while the horse and cart were in the alley, or in attempting to pass on the side of the alley on which, according to her testimony, the horse and cart were standing instead of passing on the other side, she was clearly negligent in remaining so close to the horse while the driver was attempting to make room for her to pass. There is not a suggestion in the evidence that the driver intentionally caused the horse to move in her direction. On the contrary, the only inference to be drawn from her testimony and the testimony of the driver is that what he did was done in an effort to move the horse out of her way. According to her own statements, the horse did not move forward, or move his hind feet, but simply moved his right front foot, and the evidence furnishes no excuse for her having remained standing so close to the horse as to expose her to the risk of an unexpected movement of his foot, or for her failure to step back to a point of safety when the driver undertook to change the position of the horse. Ordinary care on her part would have avoided the accident and she cannot complain of the consequences of her failure to exercise it.

The prayers instructing the jury that the plaintiff had offered no evidence legally sufficient to entitle her to recover are not in accordance with the form approved where a prayer of that kind is offered at the conclusion of all of the testimony in the case, but as we think the case was properly withdrawn from the jury on the ground that the plaintiff was guilty of contributory negligence, and as the only exception in the case is to the ruling of the Court on the prayers, we will affirm the judgment in favor of the defendant.

*Judgment affirmed, with costs.*